IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

CHERIE LYNN BAKER,

      Plaintiff,

v.                                       CASE NO. 1:17-cv-217-MW-GRJ

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals to this Court from a final decision of the Acting

Commissioner of Social Security (the "Commissioner") denying Plaintiff's

application for disability insurance benefits ("DIB") and supplemental

security income ("SSI") pursuant to Title II and Title XVI, respectively, of

the Social Security Act. (ECF No. 1.) The Commissioner has answered,

(ECF No. 9), and both parties have filed briefs outlining their respective

positions. (ECF Nos. 16, 19.) For the reasons discussed below, it is

recommended that the Commissioner's decision should be affirmed.

## I.  PROCEDURAL HISTORY

Plaintiff protectively filed applications for Title II DIB and Title XVI SSI

benefits, alleging a disability onset date of November 1, 2009. (R. 82–83, 186–93.) Plaintiff claims she cannot work due to lower back pain, a problem with her right leg, sinus problems, diabetes, and high blood pressure. (R. 221.) Her applications were denied initially and upon reconsideration. (R. 84–85, 114–15.) Following a hearing on May 25, 2016, an Administrative Law Judge ("ALJ") issued a written decision on July 8, 2016, finding Plaintiff not disabled. (R. 10–47.) The Appeals Council thereafter denied Plaintiff's request for review. (R. 1–6.) Plaintiff subsequently appealed the ALJ's decision to this Court. (ECF No. 1.)

## II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g) (2012). Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen,* 793 F.2d 1177 (11th Cir. 1986) (finding that the court must also consider evidence detracting from evidence on which the Commissioner relied). However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental

impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(d)(1) (2012); 20 C.F.R. §§ 404.1505, 416.905 (2015).[1] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy. § 423(d)(2); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). First, if a claimant is working at a substantial gainful activity, she is not disabled. §§ 404.1520(b), 416.920(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. §§ 404.1520(c), 416.920(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. §§ 404.1520(d),

---

[1] All further references to 20 C.F.R. will be to the 2015 version, unless otherwise specified.

416.920(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. §§ 404.1520(e)–(f), 416.920(e)–(f). Fifth, if a claimant's impairments (considering her residual functional capacity ("RFC"), age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. §§ 404.1520(g), 416.920(g).

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff. *Walker v. Bowen*, 826 F.2d 996, 1002 (11th Cir. 1987); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy. *Doughty*, 245 F.3d at 1278 n.2.[2]

---

[2] In *Doughty* the court explained this burden shifting as follows:

> In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.

*Id.* (internal citations omitted).

## III.  SUMMARY OF THE RECORD

### A.    Medical Records

Plaintiff treated predominantly with Echo Community Health Care in 2012 and 2013. On examination in February 2012, September 2012, October 2012, January 2013, February 2013, and July 2013, Plaintiff was cooperative, alert, oriented, and had normal affect and good eye contact. (R. 326, 329, 332, 335, 337, 341, 344–45.)

In August 2013, despite being tearful and sad following the recent deaths of two friends, Plaintiff was nevertheless cooperative, alert, oriented, and had normal affect and good eye contact. (R. 323.) She was also cooperative, alert, oriented, and had normal affect and good eye contact in October 2013, but did report some recent back pain after starting a new job at a café. (R. 319–20.)

Approximately five months later, in March 2014, Plaintiff first reported insomnia, difficulty concentrating, irritability and moodiness, anxiety, and depression. (R. 372.)

She later presented to William E. Benet, Ph.D., Psy.D., for a consultative psychological evaluation on April 10, 2014. (R. 376–79.) Plaintiff reported severe back pain and depression, manifested by

depressed mood, crying episodes, insomnia, difficulty concentrating, and social withdrawal. She told Dr. Benet that she had been unemployed since November 2013 due to back and leg pain. At some point she also divorced her ex-husband because he was verbally abusive. Plaintiff reported not having many friends locally, having just moved to Florida from Indiana. Her favorite activity was reading murder mysteries. She also read the Bible.

On examination Plaintiff was alert, oriented, friendly, and cooperative. Eye contact was good and gait and motor activity were normal. Plaintiff's speech was clear, coherent, and relevant. Plaintiff was "very articulate," and "had no difficulty understanding and responding to questions or sustaining conversation." (R. 378.) Her thinking was organized and goal directed, without suicidal thoughts, and perceptions were adequate. Plaintiff's mood, however, was depressed and her affect congruent. Attention and concentration varied. Immediate recall was above average for her age, but delayed recall was poor. Verbal reasoning was average, as was her general intellectual ability. Judgment and insight were adequate. Dr. Benet assessed Plaintiff with mood disorder, not otherwise specified, and a GAF score of 50–55.

Over a year later, in October 2015, Plaintiff presented to Palms

Medical Group with complaints of anxiety and back pain. (R. 413–17.) She reported having difficulty concentrating, but also reported that over the last two weeks she was not bothered at all by trouble concentrating on things, such as reading or watching television. On examination she appeared oriented, but anxious and hypomaniac with inappropriate mood and affect. She was assessed with general anxiety and prescribed Paroxetine.

A later psychiatric examination in November 2015 was normal. (R. 409–12.) The doctor switched her medication to Zoloft, however, because the Paroxetine had caused leg cramps and aches.

By February 2016, Plaintiff reported that her anxiety was "well controlled," that she was very pleased with Zoloft, and that she had not had any panic attacks while on the Zoloft. (R. 404–407.) Although she continued to report anxiety, feeling down and depressed, and having difficulty sleeping, she did not report having problems with concentration. On examination her memory appeared normal, and she was oriented with appropriate mood and affect.

## B.    Opinion Evidence

In April 2014, based on his consultative psychological evaluation of Plaintiff, Dr. Benet opined that Plaintiff "should be able to perform work-

related mental tasks involving understanding and memory, social interaction and adaptation but is likely to have moderate to marked difficulty in performing tasks involving sustained concentration and persistence." (R. 378.) Plaintiff also "should be capable of managing her benefits." (R. 379.) Finally, Dr. Benet opined that "[s]ignificant improvement in mood may be expected with psychiatric treatment and supportive psychological counseling addressing the verbal abuse [Plaintiff] experienced when she was married." (*Id.*)

## C.    Work History Evidence

Plaintiff previously worked as a waitress at various restaurants. (R. 253.) Plaintiff also worked as a cashier in 2006, 2009, and 2012. (R. 222, 253.) Specifically, Plaintiff worked as a cashier at a gas station for six months in 2006 and approximately four months in 2009. (*Id.*) In 2006 her total earnings were $2,907.66. (R. 209.) Her total earnings in 2009 were $6,945.05. (R. 210–11.) She also worked as a cashier at an ice cream shop for ten months in 2012, earning $5,437.03. (R. 211, 253.)

## D.    Hearing Testimony

At the hearing before the ALJ on May 25, 2016, Plaintiff was fifty-three years old, had a high school diploma, and lived with her teenage

daughter. (R. 31, 34.)

Plaintiff's back problems started in November 2009. (R. 31–32.) She worked, however, through October 2013 until she could no longer stand up long enough to do anything. She could not stand for more than twenty minutes at a time (R. 35.)

Plaintiff went to physical therapy for laser treatment once a month for her back pain. (R. 33.) Her therapists told her to elevate her feet twelve to eighteen inches by propping them up on a pillow. (R. 33–34.) She was not receiving any psychiatric care other than Zoloft from her primary care physician, which helped level her out. (R. 36–37.) She did not have as many anxiety attacks as she did before taking Zoloft. (R. 36.)

Plaintiff did the cooking, cleaning, and laundry. (R. 34.) She also did the grocery shopping and could lift a five pound bag of potatoes. (R. 34–35.) She did not drive, however, and instead took public transportation, which required her to walk a quarter of a block to the nearest bus stop. (R. 34.) She occasionally went shopping or to a movie with her daughter. (R. 37.) During the day Plaintiff read and watched soap operas and then watched television and movies with her daughter at night. (R. 39.) When she sat on a chair to watch television she used a foot stool. (R. 39.) She

could sit through a whole movie, but sometimes needed to pause the movie to get up and walk around. (R. 37.)

A vocational expert ("VE") also testified at the hearing. The VE testified that if Plaintiff was limited to the light exertional level with no climbing or exposure to hazards, Plaintiff could perform her past jobs as a convenience store cashier, which has a specific vocational preparation ("SVP") of 2 and is unskilled work, and an informal waitress, which has an SVP of 3 and is semi-skilled work. (R. 41–42.) Additionally, if Plaintiff needed to be able to perform the job from both a seated and standing position so she could change positions at her leisure, she could work as a convenience store cashier. (R. 42.) The VE explained:

> [T]here are cashiering positions that do provide a stool, but not all convenience store cashiers have stools, but some of them do. So, the basic premise of cashier II, which is a convenience store cashier, some of them do, some of them don't. So, about 50 percent of cashier positions – cashier II positions do provide stools.

(*Id.*) In looking at the national economy numbers because there are approximately 816,306 cashier II positions, 50 percent of those positions would be approximately 408,153.

The VE further testified that a hypothetical claimant limited to simple, routine tasks would be able to perform work as a cashier II. The

hypothetical claimant, however, would not be able to prop her feet up approximately twelve inches.

Alternatively, a hypothetical claimant who is limited to light work, no climbing or exposure to hazards, who has the ability to perform the job from a seating or standing position, who is limited to simple routine tasks, and who has the ability to elevate her legs periodically for half the day to twelve inches could perform work as a collator operator, routing clerk, or marker, all of which have an SVP of 2 and are unskilled work. (R. 43.)

If an individual needed to take an hour and a half break on her own time, outside of her regular fifteen-minute breaks in the morning and afternoon and lunch breaks, however, the individual would be beyond the acceptable industry standard for breaks and off-task time. (R. 43–44.) Someone who needed to come in late or leave early or call out altogether once per week would also be beyond the industry standard for absenteeism or tardiness. (R. 44.)

The VE's testimony about elevating the legs, changing positions, taking breaks, and being absent is based upon her years of experience in the field, working with employers, discussing with them those issues, doing job analyses, and understanding how work is performed. (R. 44–45.)

## E.   The ALJ's Findings

The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2014. (R. 12.) She further determined that Plaintiff has not engaged in substantial gainful activity since November 1, 2009, the alleged onset date. The ALJ found that Plaintiff has the following severe impairments: (1) Osteoarthrosis; (2) Diabetes mellitus; and (3) Affective disorder. At step three, the ALJ did not find that any of the impairments or combination of impairments met or medically equaled the severity of one of the listed impairments. (R. 13.)

At step four the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with additional limitations. (R. 14.) Based upon this RFC the ALJ determined that Plaintiff is capable of performing past relevant work as a convenience store cashier. (R. 20.)

Alternatively, at step five the ALJ determined that Plaintiff is able to perform the jobs of Collator Operator, Routing Clerk and Marker, jobs which are available in significant numbers in the national economy. Accordingly, the ALJ determined Plaintiff has not been under a disability

from November 1, 2009, through the date of the ALJ's decision. (R. 21.)

## IV.  DISCUSSION

Plaintiff presents three arguments on appeal: (1) The ALJ's RFC failed to include a specific limitation on Plaintiff's ability to concentrate in accordance with Dr. Benet's opinion; (2) The ALJ improperly found Plaintiff could perform past relevant work as a cashier; and (3) The ALJ improperly relied on the VE's testimony regarding jobs that Plaintiff could perform.

## A.    The ALJ's RFC is supported by substantial evidence.

Plaintiff first argues that the ALJ's RFC failed to include a specific limitation on Plaintiff's ability to concentrate in accordance with Dr. Benet's opinion, and is therefore not supported by substantial evidence.

A claimant's RFC is the most a claimant can do, despite her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC is based, not only on medical opinions, but also the ALJ's review of all relevant evidence in the record. *Id.*; 20 C.F.R. §§ 404.1546, 416.946.

In considering whether Plaintiff met or medically equaled the severity of a listed impairment, the ALJ determined that Plaintiff has *moderate* difficulties with concentration, persistence, or pace. In explaining the support for this conclusion the ALJ wrote:

[Plaintiff] is able to use public transportation, shop for groceries

using a cart or with her daughter's help, wash dishes and
vacuum; she also spends time watching movies, but has to
take several breaks to change positions. She reported that she
spent time reading mystery novels and the Bible. The
performance of these tasks shows that [Plaintiff's] limitations in
concentration, persistence and pace are only moderate at
worst.

(R. 14.)

In determining Plaintiff's RFC, the ALJ gave "significant weight" to Dr.
Benet's opinion that Plaintiff "should be able to perform work-related
mental tasks involving understanding and memory, social interaction and
adaptation but is likely to have *moderate to marked* difficulty in performing
tasks involving sustained concentration and persistence." (R. 19, 378)
(emphasis added). The ALJ explained that she gave significant weight to
Dr. Benet's opinion because Dr. Benet "is an expert in the field of
psychology," Dr. Benet's opinion was based upon his comprehensive
examination of the claimant and a thorough review of the records, and Dr.
Benet's opinion was "consistent with the other substantive medical
evidence of record." (R. 19.)

Plaintiff now argues that in determining Plaintiff's RFC, the ALJ failed
to reconcile her finding of "moderate difficulties" regarding concentration,
persistence, or pace, with Dr. Benet's statement that Plaintiff would hav

"moderate to marked difficulty in performing tasks involving sustained concentration and persistence." Plaintiff contends that because the ALJ gave significant weight to Dr. Benet's opinion, the ALJ erred in determining that Plaintiff only had moderate difficulties with regard to concentration, persistence, or pace, and otherwise failed to include an appropriate limitation in her RFC. The Court disagrees.

The ALJ's determination regarding Plaintiff's limitation in performing tasks involving concentration and persistence is not inconsistent with Dr. Benet's opinion. Dr. Benet provided a range for the limitations (moderate to marked) pertaining to tasks involving *sustained* concentration and persistence. The ALJ accepted Dr. Benet's opinion and then thoroughly explained why Plaintiff fell on the "moderate" end of that range regarding Plaintiff's ability to perform tasks involving concentration and persistence in general. (R. 14.) The ALJ then expressly accounted for this limitation by including in her RFC that Plaintiff was limited to simple routine tasks. (*Id.*); *see Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (noting that "when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting

the hypothetical to include only unskilled work sufficiently accounts for

such limitations"); *Carpenter v. Comm'r of Soc. Sec.*, 614 F. App'x 482,

490 (11th Cir. 2015).

Accordingly, because the ALJ explained why she concluded

Plaintiff's limitations regarding concentration, persistence and pace were

on the moderate end of the range provided by Dr. Benet, there was no

error in the ALJ's RFC determination, which is fully supported by

substantial evidence.[3]

## B.   Substantial evidence supports the ALJ's finding that Plaintiff can perform past relevant work as a cashier.

Plaintiff next argues that for two reasons the ALJ improperly found

Plaintiff can perform past relevant work as a cashier.  First, Plaintiff argues

that although the ALJ relied on the VE's testimony that half of cashier jobs

could be performed using a stool, there is no evidence that Plaintiff actually

used a stool or had a stool available to her when she worked as a cashier.

Second, Plaintiff says that she did not work as a cashier at the substantial

gainful activity level sufficient to constitute past relevant work because her

---

[3] Plaintiff does not otherwise challenge the ALJ's RFC determination or the evaluation of the other opinions in the record and has therefore waived any other issues pertaining to the RFC or other opinions.

reported earnings did not establish a presumption of substantial gainful activity under the earnings guidelines in the regulations.

"Past relevant work" is work that the claimant performed within the past fifteen years, at a substantial gainful activity level, and that lasted long enough for the claimant to learn to do the work. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). The claimant bears the burden of showing that she cannot perform her past relevant work, either as she actually performed the work, or as the work is generally performed in the national economy. *Waldrop v. Comm'r of Soc. Sec.*, 379 F. App'x 948, 953 (11th Cir. 2010) (citing *Jackson v. Bowen*, 801 F.2d 1291, 1293–94) (11th Cir. 1986)). An ALJ may rely on a VE's testimony to determine the demands of the claimant's former work and whether the claimant can still perform that work. §§ 404.1560(b)(2), 416.960(b)(2); SSR 82-61, 1982 WL 31387 (Jan. 1, 1982); *Simpson v. Comm'r of Soc. Sec.*, 423 F. App'x 882, 884–85 (11th Cir. 2011).

The Court concludes that the ALJ properly relied on the VE's testimony in determining that Plaintiff could perform her past relevant work as a cashier. The VE testified that an individual with Plaintiff's RFC could perform work as a convenience store cashier. (R. 42.) The VE further

testified that based on her years of experience in the field, approximately

fifty percent of cashier positions provide stools for a sit/stand option. (R.

42, 44–45.) The VE explained that fifty percent of cashier positions in the

national economy equates to approximately 408,153 positions. (R. 42.)

Although there is no evidence that Plaintiff ever actually used a stool when

she worked as a cashier, the ALJ was entitled to rely on the VE's testimony

to conclude that Plaintiff could perform the job as it is generally performed

in the national economy. At step four of the sequential analysis, the

claimant bears the burden of proving that she cannot perform her past

relevant work *either* as she actually performed the work *or* as the work is

generally performed in the national economy. *Barnes v. Sullivan*, 932 F. 2d

1356, 1359 (11th  Cir. 1991). Therefore, even assuming that Plaintiff never

used a stool when she worked as a cashier, she still had the burden of

proving that she could not perform the job of cashier as the job is generally

performed in the national economy. The VE testified that as the job of

cashier is generally performed in the national economy, the use of a stool

is permitted (in at least half of the jobs).

Additionally, the ALJ did not err in concluding that Plaintiff's past

work as a cashier constituted substantial gainful activity. The regulations

define "substantial gainful activity" as:

> "work activity that is both substantial and gainful." 20 C.F.R. §
> 404.1572. "Substantial work activity is work activity that
> involves doing significant physical or mental activities. Your
> work may be substantial even if it is done on a part-time basis
> or if you do less, get paid less, or have less responsibility than
> when you worked before." 20 C.F.R. § 404.1572(a). "Gainful
> work activity is work activity that you do for pay or profit. Work
> activity is gainful if it is the kind of work usually done for pay or
> profit, whether or not a profit is realized." 20 C.F.R. §
> 404.1572(b).

*Martinez v. Comm'r of Soc. Sec.*, 132 F. App'x 310, 312 (11th Cir. 2005).

Earnings are not dispositive in determining whether work constitutes

substantial gainful activity. *Eyre v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x

521, 524 (11th Cir. 2014); *see Pena v. Berryhill*, No. 16-21376-CIV-

SCOLA/OTAZO-REYES, 2017 WL 2984163, at *9 (S.D. Fla. May 8, 2017)

(finding plaintiff's past work as a nurse and pizza driver was "past relevant

work," despite the amount of earnings, given plaintiff's testimony regarding

the length and nature of her work in those positions and her failure to

object to the ALJ's consideration of those positions as past relevant work

at the hearing).

Although Plaintiff's earnings as a cashier may have fallen below the

monthly thresholds set by the Commissioner to establish substantial

gainful activity,[4] the evidence demonstrates that Plaintiff worked as a

cashier over the course of three years—2006, 2009, and 2012. In 2012,

Plaintiff worked as a cashier for ten months of the year. Although her work

as a cashier may have been part-time work, her earnings nonetheless

totaled $2,907.66 in 2006, $6,945.05 in 2009, and $5,437.03 in 2012. *See*

*Martinez*, 132 F. App'x at 312 (noting that substantial work activity involves

doing significant physical or mental activities and may be substantial even

if it is done on a part-time basis or the claimant gets paid less).

Regardless, Plaintiff never raised the possibility with the ALJ that her

work as a cashier did not constitute past relevant work. "It is a cardinal rule

of appellate review that a party may not challenge as error a ruling or other

trial proceeding invited by that party." *Larry v. Comm'r of Soc. Sec.*, 506 F.

App'x 967, 969 (11th Cir. 2013) (quoting *United States v. Ross*, 131 F.3d

970, 988 (11th Cir. 1997) (internal quotation marks omitted). Plaintiff

testified that she previously worked as a cashier. (R. 41.) Plaintiff also

submitted work history information reflecting that she previously worked as

a cashier. (R. 253.) Neither Plaintiff nor her attorney ever suggested that

---

[4] 20 C.F.R. § 416.974(b)(2)(I); *see Substantial Gainful Activity*, Social Security
Administration, https://www.ssa.gov/oact/cola/sga.html (last visited June 1, 2018)
(establishing $860, $980, and $1,010 as the monthly substantial gainful activity levels in
2006, 2009, and 2012, respectively).

her work as a cashier might not be past relevant work. Thus, to the extent

this could be considered error Plaintiff essentially invited any error about

whether her work as a cashier constituted past relevant work. Plaintiff has

therefore failed to demonstrate that substantial evidence does not support

the ALJ's finding that Plaintiff could perform past relevant work as a

cashier. *See Schlegel v. Comm'r of Soc. Sec.*, 6:16-cv-1236-Orl-DCI, 2017

WL 2379811, at *3 (M.D. Fla. June 1, 2017) ("Claimant's failure to raise the

issue to the ALJ at the hearing is fatal to his current argument. Substantial

evidence existed to support the ALJ's determination that Claimant's

position as a kitchen helper was substantial gainful activity, yet Claimant,

who was represented by counsel, failed to make any argument or showing

at the hearing to carry his burden of demonstrating otherwise."); *Pena*,

2017 WL 2984163, at *9.

**C.    The ALJ properly relied on the VE's testimony to conclude that Plaintiff could perform past relevant work, and alternatively, other work in the national economy.**

Finally, Plaintiff argues that the ALJ improperly concluded, based on

the VE's testimony, that Plaintiff could perform past relevant work and,

alternatively, other work in the national economy.  Plaintiff says the VE's

testimony conflicted with the Dictionary of Occupational Titles ("DOT")

because the jobs the VE identified required a reasoning level of SVP 2 or SVP 3, while the ALJ limited Plaintiff to performing simple routine tasks. Plaintiff further argues that the ALJ failed to inquire with the VE whether her testimony was consistent with the DOT and otherwise failed to resolve the conflict between the VE's testimony and the DOT.

Contrary to Plaintiff's assertion, the ALJ properly relied on the VE's testimony to conclude that Plaintiff could perform past relevant work as a cashier and, alternatively, at step five that Plaintiff could perform other work in the national economy, including work as a collator operator, routing clerk, and marker. Notably, the ALJ's hypothetical questions to the VE encompassed all the limitations the ALJ included in her assessment of Plaintiff's RFC.[5] *See Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) (for the testimony of a VE "to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments").

Plaintiff's argument regarding the reasoning level of these jobs is flawed. Even if the reasoning level of jobs seems to exceed the

---

[5] Other than her argument pertaining to simple routine tasks discussed above, Plaintiff does not challenge the ALJ's RFC finding and has therefore waived any other challenges to the ALJ's RFC finding.

requirements of unskilled work, the SVP level ultimately determines the skill level of the jobs for purposes of the ALJ's decision. *See* SSE 004-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000) (an ALJ may not rely on evidence that is "inconsistent with the regulatory definition of unskilled work"); *Anderson v. Astrue*, 2011 WL 3843683, at *4 (S.D. Ala. Aug. 30, 2011). The jobs that the VE identified in response to the ALJ's hypothetical questions—cashier, collator operator, routing clerk, and marker—involve unskilled work with a SVP of two. *See* Cashier II, DOT, No. 211.462-010; Collator Operator, DOT, No. 208.685-010; Routing Clerk, DOT, No. 222.687-022; Marker, DOT, No. 209.587-034. Unskilled work involves work that needs little or no judgment to do simple duties that can be learned on the job in a short period of time. 20 C.F.R. §§ 404.1568(a), 416.969(a). Unskilled work also involves understanding, remembering, and carrying out simple instructions, making simple work-related decisions, dealing with changes in a routine work setting, and responding appropriately to supervision, co-workers, and usual work situations. *See* SSR 96-9p, 1996 WL 374185, at *9 (July 2, 1996). Plaintiff has failed to demonstrate that she is unable to perform the basic demands of unskilled work.

Secondly, to the extent Plaintiff claims there is a conflict between the

VE's testimony and the DOT, neither Plaintiff nor her attorney ever brought

to the ALJ's attention during the hearing that there was a conflict.  An ALJ

is entitled to rely upon the testimony of a VE unless it is brought to the

ALJ's attention that there is a conflict between the DOT and the VE's

testimony. *See Hurtado v. Comm'r of Soc. Sec.,* 425 F. App'x 793, 795

(11th Cir. 2011) (ALJ did not err in relying on VE's testimony where plaintiff

failed to challenge the VE's testimony and its consistency with the DOT at

the hearing). There is no evidence during or after the hearing suggesting

that the ALJ knew a conflict existed.  The ALJ therefore was fully entitled to

rely on the VE's testimony.

Moreover, the ALJ concluded during her analysis at step five, that the

VE's testimony was consistent with the DOT *or*  was otherwise based on

the VE's professional experience. (R. 21.)  Nonetheless, Plaintiff's

argument fails because even assuming there was a conflict between the

VE's testimony and the DOT, "when the VE's testimony conflicts with the

DOT, the VE's testimony 'trumps' the DOT." *Jones v. Apfel*, 190 F.3d 1224,

1229–30 (11th Cir. 1999).

Accordingly, for these reasons, the Court concludes that substantial

evidence supports the ALJ's finding that Plaintiff could perform past

relevant work as a cashier. And even if the ALJ erred in finding Plaintiff could perform her past relevant work (which she did not) the ALJ alternatively found at step five of the sequential evaluation that Plaintiff could perform other work in the national economy, which exists in significant numbers, such as collator operator, routing clerk, or marker.

## V.  RECOMMENDATION

In light of the foregoing it is **RECOMMENDED** that the decision of the Commissioner should be **AFFIRMED**.

**DONE AND ORDERED** this 1st day of June 2018.

*s / Gary R. Jones*
GARY R. JONES
United States Magistrate Judge


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**